Stand, please. This Honorable Court is again in session. Be seated, please. Mr. Stockman. May it please the Court, my name is Robert Stockman, here on behalf of the Environmental Defense Fund. I would like to reserve four minutes for rebuttal. We respectfully ask that this Court grant the petition for review. At issue here is the public's right to know the specific identity of chemicals being manufactured and processed in the United States and use that information to study the health and environmental effects of these chemicals. We recognize that Congress allowed confidentiality claims for certain information that would otherwise be available through the inventory, but Congress put a number of strict limitations and requirements on those claims, and at every turn, EPA has disregarded the plain text of the statute in favor of greater concealment. We ask this Court to enforce the statute as written and to limit confidentiality claims to those permitted under the law. First, Section 8b4b, which governs the inventory, provided that any manufacturer or processor may seek to maintain an existing claim for confidentiality pursuant to Section 14. Under the plain language, a person does not maintain an existing claim if they've never made that claim before. This is particularly so with confidentiality claims pursuant to Section 14, which are defined in both their procedure and substance to be person-specific. Therefore, they are not logically interchangeable or transferable. Section 8b4b clearly does not permit new claims through this process, and yet EPA adopted an interpretation and an approach that effectively allows such new claims. Indeed, in its brief, EPA asserts that whether or not such a claim is viewed as new is a semantic matter with no legal significance. But the limitation of this process to existing claims gives it legal significance. Congress did not intend to allow new claims. Neither the EPA nor the interveners have identified any way that their interpretation of the statute gives meaning to the word existing claim, and despite working on this case for a year, I've not figured out what they think existing means. I thought they meant a claim made by someone else. How hard is that? That's what they mean. You may disagree with it, but that is what they mean, isn't it? Well, so I suppose that must be what they mean, though. They didn't actually expressly say that in the rulemaking at JA 130. They didn't say the claims were transferable. It's not that the claim is transferable. It's that some other entity has made the claim, it's on the list, and they want to continue that claim of confidentiality. It's not that they want to continue their claim. It's that they want to continue a claim that's already been made. I think the problem with that is that the claims are all, if you turn to the substance of what the claims are, they all turn out to be person-specific. So, for example, under Section 14, when you assert a claim, you have to assert that disclosure of this information would cause substantial harm to your competitive position. So it doesn't make sense for Company A, who when they asserted a claim to say disclosure of this information would cause substantial competitive harm to my Company A's position, it's simply not the same claim for Company B to come in and say, well, actually, it causes substantial competitive harm to my Company B's position. They're different. And that's not the only way in which Section 14 makes them different. They are going to have to substantiate the claim somehow, right? They will ultimately have to substantiate the claim. This is just a holding pattern until that occurs. Yes, but it's an important holding pattern. I'm not saying it's not important. Yes. But it is true that they plan to, under the review plan, require substantiation of the claims, though one of our other claims goes to why their substantiation will be inadequate under the statute as written. Before getting to that, though, I would like to stay on maintain a claim for just a moment. One other problem here is even if the statute were amenable to different interpretations, the actual rationale they gave in the rule is false. What they said in the rulemaking is that only the original claimant would be in a position to support a claim, which seems to suggest that in their view that when later people came in, they didn't have to make any confidentiality claim, and that, in fact, you could say have Company B come in, say this isn't confidential, and EPA would continue to conceal it. That's not what the regulation said. The regulation said that a person may assert a claim for confidentiality for any information they submit under this part, and the claim must be submitted with the company, the information when it's submitted. So under the rules, Company B or Company C or Company D should have been asserting a confidentiality claim. And this gets to something very important to us, which is that when the second person comes in and says this is or doesn't submit a confidentiality claim, our view is that means EPA should be sharing that information with the public. It's not confidential. At a minimum, that means they should step back and say, is this really secret? Company B doesn't even consider it confidential. What EPA seems to be saying is that it can get a submission from Company B, Company C, Company D, none of which assert confidentiality, and they'll maintain the confidentiality even though it's no longer really a secret. So part of our problem is with their rationale, which we don't think is supported by the rule, regulations that were in place at the time, or with their public statements. They have, in fact, in the past said that when one submitter reveals the chemical identity, then it's generally no longer secret. And so therefore, it's no longer eligible for confidentiality. They said that in the Federal Register notice that we cited in our brief, 83 Fed Regs 5623, and also in the submission we submitted through 28J. So the thing that I think gets at this is their rationale was fundamentally wrong. It's fundamentally contrary to their regulations, and it represents an approach to confidentiality that results in greater concealment from the public than the public has a right to know. So for that reason alone, the fact that their rationale was arbitrary and capricious would be a reason to reverse. Second, I'd like to turn to the substantiation issue, which is that when Congress enacted Section 14c1b, which requires a statement accompanying the confidentiality claims, Congress clearly intended that the confidentiality claims should have to meet the requirements of that statement. Specifically, Congress intended that Congress, that EPA should be considering whether the information is readily discoverable through reverse engineering, and they should deny claims when it's not, when it is readily discoverable through reverse engineering. But they adopted a regulation that doesn't require them to consider that, and in fact doesn't authorize them to deny a confidentiality claim on that basis. So the adoption of 2208 just straight up is a significant problem. But do you understand the government's position to be that if it is easily reversible, it's still confidential? Or do you understand the government's position to be they're just not asking another version of the same question included in the certificate? I understand them to, in the brief, have taken the position that they don't have to consider this factor. So they can decide whether or not to substantiate the claim without separately considering whether or not it meets this particular factor. And at a minimum, that's also what the regulations effectively do, because by cutting every single question that gets at this factor, they'll have no information to go on when assessing this particular factor. So I take their position. Let's leave aside the information question. I guess I was reading pages 39 and 40 of the brief as saying that they're still going to follow these statutory requirements, that these are the substantive requirements for the confidentiality claim. I guess we'll find out. But your reading is that they're going to ignore reversibility now? My reading is that they'll ignore it, or at a minimum, they have not committed to reviewing it. There was only one question about reversibility that was dropped, right? What was that question? Actually, there were two. There were at least two questions. The only one that really directly related to reversibility. So the first classic question is whether the product leaves, whether the chemical leaves the facility in a product that's available to the public, and whether then people should be able to discover it through reverse engineering. A second question that gets at that. Was that last part of the question? I don't remember that last part. I guess that part technically they didn't. Technically, the words, the words. Why don't you just read those last two questions? Which, if I could have found them in my pile, I would have read myself. Okay. So here is one of the questions. Does this particular chemical substance leave the site of manufacture in any form? For example, as product, effluent emission. If so, what measures have been taken to guard against the discovery of its identity? And then another is, if the chemical substance leaves the site in a product that is available to the public or your competitors, can the chemical substance be identified by analysis of the product? So both of those, neither of them uses the phrase reverse engineering, but both of them clearly would at least get at that information and force someone to actually provide an account for why or why not their product is, can be discovered through reverse engineering. I know this is something we're particularly concerned about because. Can I just ask, did they, so looking at the form that they had before, it didn't look like there was much to be answered other than yes or no. Was there a serious amount of additional supporting data that, even under the original notice that was supposed to be provided? So the original notice looked sort of messy, like I wasn't sure whether that was really what it would look like in the end. It didn't provide the boxes for information to be provided, but my, to be brutally honest, my assumption was that when they actually created the final form, they would provide boxes for people to fill out and provide that information. I mean, the other thing is that I think a yes or a no is not a very good substantiation. I mean, if someone's answer to that question is no and they provide no information about what that means, I would submit that EPA should deny the claim. Is your understanding that they don't do any independent review of their own after getting the answers to these questions or ask for any more substantiation? So this is a historically interesting question. Historically, they did not review. I only want it to be interesting for this morning. They did not review the substantiation questions. Historically, they did not review many of the claims. What they are supposed to do now is they are supposed to review these substantiation claims, and I think theoretically they should do follow-up where appropriate. This sort of gets us to one of our other problems, which is that they're not publishing any of their determinations on these claims. So it's actually sort of impossible for us to know whether or not they're reviewing the substantiations, how in-depth they're going, whether or not. I mean, this program operates like a black box, so we don't know whether they're actually reviewing the substantiation questions or how much information they consider to be necessary to meet these requirements. That's one of the things that our third claim gets at. Let me go back on the reverse engineering. The 2613C3 says that they will substantiation in accordance with rules promulgated by the administrator. It doesn't have any of the limitations that you want to point to from the prior section of the statute. So our view is that it needs to be informed by the prior version of the statute or the prior provision. And what they're substantiating is the assertions made in the statement set forth in 14C1B. So our view is that here EPA needs to at least consider the need to substantiate that. And that's our main objection here, is they didn't even give an analysis of why they're not, how they're going to figure out reverse engineering. They just literally said we wanted to be more succinct, so we cut everything. So even if they have some discretion in shaping those regulations, which they do, our view is that it's an abuse of discretion or it's arbitrary and capricious to completely fail to consider a relevant aspect of the problem, which was the reverse engineering prong. So our view is that it's, they could come up with lots of different types of substantiation questions, but they at least have to consider what they're trying to substantiate. And our view is that it's pretty clear that Congress didn't write 14C1B to be a mere procedural formality where people make this assertion and then that all disappears. Congress ---- Is this right for a court's consideration at this point, given the way the statute is structured? The agency can adopt rules as it sees fit. In a particular case, pursuant to those substantiation rules, they don't consider reverse engineering. Can it be challenged? So the thing is, in our view, this is the rulemaking where they adopted how they're going to approach substantiation for the information that's submitted under this rule. So this is the set of regulations where we'll get an opportunity to challenge it. We won't get a later opportunity to challenge how they're doing substantiation unless it's in, I mean, so this is the one opportunity to get at how they're doing inventory rule, which includes the information that was submitted as part of the inventory but also all the perspective moving from inactive to active notifications. So we're not going to get a better opportunity to get at this. I suppose we could bring an as-applied challenge to specific determinations. That's what I'm talking about. But I think that the thing is then they'll say we're in compliance with our regulation and so it's too late. You needed to challenge our regulation. And they did set forth how they would do substantiation in this regulation. They did specifically choose to address it in this rulemaking. So in our view, it is right for challenge now. And on rightness, I would note that Congress provided a very specific 60-day statutory deadline for us to sue, which sort of counsels in favor of finding that we can sue early. There's an intention of Congress that rules get immediate and early review, and we won't get a chance to challenge this rule at some later date as a result of that 60-day deadline. Now, is your argument that the rule that they adopted forecloses the possibility of considering reverse engineering, a reasonable basis to believe the information is not readily discoverable? I think the rule they adopted makes it hard to – I think it is hard to know that answer. But they said that things would be treated as confidential if they meet the requirements of 2208, and 2208 does not require consideration of reverse engineering. So our concern is that later, even if they say, oh, this is discoverable through reverse engineering, someone could legitimately say, well, you said that it's confidential if it meets 2208, and that doesn't specifically require reverse engineering be considered. So they've created a problem that needs to be addressed at this stage in the process. So I think we can't postpone review to a later date. Well, they do. I'm just trying to figure out how realistic this is as a problem at this early stage as a facial matter. They do still have to show that they have taken measures to maintain confidentiality. And the third question is they think your business has disclosed the information to others. What precautions has your business taken? Now, if putting the thing out on the market would allow somebody to sort of analyze it and reverse engineer the content, would that not be – is your position that wouldn't be part of what that third question? I think a person could easily answer that question and just decline to mention all of that. But don't these businesses have a lot of interest in making sure their stuff isn't reverse engineered? Well, I think that a lot of people will have an interest in providing EPA with less information when the information is unfavorable to them. So if they don't – if you can read a question to say – It seems like reverse engineering – the ability to be reverse engineered is just the flip side of whether it's confidential, because if you've got something out there and people can just dissect it, then you're not even going to be able to establish up front that it's confidential, right, because it's out there and everybody's been able to figure out what it is. So I would like to think that were true. What is often, I think, the case is that it's known within industry what these chemicals are. Many of these are known within industry because they have the resources to go about reverse engineering. The problem is the public doesn't have the resources to reverse engineer each chemical that comes out. So, I mean, in an ideal world, we would do all that reverse engineering ourselves, but we don't have the resources and the laboratories to do it. So I think that – I think that requiring that they inquire into this particular facet is important, because they could just say, oh, well, you say it's a secret, that's good enough for me, and not inquire into this unless they're forced to do so. I mean, there's no evidence that they historically have inquired into this factor. It says readily discoverable through reverse engineering. Is it talking about discoverable by companies with the best technology and scientists, or does readily discoverable through reverse engineering suggest? I would – my submission would be that it's under – readily discoverable by reverse engineering was meant to get at the companies that would be engaged in reverse engineering. So the sort of people who have the resources to do it. The question isn't whether just any random person could reverse engineer it, but whether the average competitor would be able to sit down and reverse engineer it, because that's what Congress was interested in and what Congress was interested in getting at. So I think that's what that standard should be trying to get at. All right. Then I guess it would be hard to say something – I'm just trying to figure out if by not having a specific question directed at that in terms of reverse engineering, we can tell from the face of the challenge of this regulation that they are ignoring the statutory requirement to protect against reverse engineering as opposed to – it's built into the very nature of demonstrating confidentiality up front, because you just can't be confidential if other people can figure out what it is. And so that it is, as Judge Edwards was suggesting, more of a ripeness problem here to figure out what they meant by these questions. So I think that part of the problem here is they didn't address this in the rulemaking at all. I mean, it would be one thing if in the rulemaking they had sat down and said, we're incorporating all of that into our confidentiality determination. We have this plan to get at reverse engineering through X, Y, and Z, and that's why you have nothing to be concerned about. But the Court can't just – I mean, that's not what they did. They just chose to ignore it, which in my view is arbitrary and capricious. So the problem is that they didn't address this issue in the rulemaking. There may be more than one way to skin this particular cat, but they have to actually do it. I'd also note that this is a program that has had a long history of not – of over too many confidentiality claims. We cited in our brief numerous GAO reports about how this program fails to hold confidentiality claimants to the requirements they're supposed to meet. So I think – and Congress very specifically revamped this whole program with the goal of getting more scrutiny on these confidentiality claims. So I think that it is in a situation where it makes sense to say, trust them, they'll just get to it, because historically they have not gotten to it. They have not been doing this scrutiny. And so it simply doesn't make sense to say, well, we can just assume that they will scrutinize these claims for this factor. And then for purposes of whether an as-applied challenge could be brought later, put aside the procedural requirements and timing issues that you've raised. I'm just asking, in nature, would you or people in the public have any ability to know whether something could be – is actually saying that later? This is one of our biggest problems, is we don't know – we don't have the information. And that problem hits at multiple points. One, when they don't make the determinations public, we don't know that there even is information that's been submitted. We don't know what the reasoning was behind why it's not being – why it's being held confidential. And then even if we could break that all down, we don't have the expertise that EPA has to scrutinize whether something is reverse-engineerable. This is something that their scientists would actually be quite good at doing if they put their scientists on the job of doing it. So it's particularly important that they do it and create these robust records when they're reviewing confidentiality claims. It's not something that the outside community can do, and I don't think it's something Congress thought we should have to do to be able to get access to this information. Other questions from the bench? Thank you. May it please the Court. Philip Dupre with the Department of Justice on behalf of EPA. With me at council table is Elizabeth Thaler from the EPA's Office of General Counsel. Can we start by talking about this reverse-engineering question? So I marked in your brief about eight places where you say that the four certified questions are the substantive requirements of the statute for confidentiality. The four-part statement generally reflects the substantive requirements for protection from disclosure, et cetera. In dropping the substantiation questions about reverse-engineering, was that to indicate that the agency doesn't believe that that is a substantive factor that has to be satisfied for confidentiality? The short answer is no. The long answer is that the inclusion of the assertions that need to be made on a confidentiality application that are listed in 2613C1B that include a reasonable basis to believe that the information is not readily discoverable through reverse-engineering. Those statements are not in and of themselves the substantive requirements for confidentiality claims. So what does this mean? I'm just quoting you from page 10 of your brief. The four-part statement generally reflects the substantive requirements for protection from disclosure that are codified elsewhere under TSEA as well as in the existing regulations. Correct. I thought you just told me that they don't represent substantive requirements. I guess what I would say is these are claims, excuse me, these are statements that go to the criteria for confidentiality that basically says FOIA Exemption 4 that says there can be substantial competitive harm if information is disclosed. And so, for instance, under EPA's FOIA regulations under 40 CFR 2.208C, which is cross-referenced in Section 14 of TSEA, it imposes a requirement that the information is not and has not been reasonably obtainable without the business's consent by other persons by use of legitimate means. And so, for example, reverse-engineering would fall into that category. Okay, so let me say again my question. Does the EPA agree that if something is readily, reversibly engineered, that it doesn't qualify for confidential treatment? Yes. Yes. And so the only question here is whether you had to ask a couple more questions about that, not about whether the deletion of the last two questions or maybe the last one question was a substantive change in the agency's understanding of its responsibilities. Is that right? Well, I think it is. There definitely has not been any substantive change on the agency's part in terms of what is required for a chemical identity to be deemed confidential. Really, in putting together this rule, EPA was tasked with including substantiation questions. And those questions could go towards substantiating the claim. And I think what's important is to differentiate between essentially substantiation questions and the procedural requirements that Congress included that go to the assertion of a claim. So, for instance, while Congress required under TSCA Section 14c1b that anyone who asserts a confidentiality claim includes a statement that says all of what's required, including that they have a reasonable basis to believe that the information is not readily discoverable through reverse engineering, that is included in this rule. And everyone who submits a confidentiality claim under this rule has to include that statement. What I think petitioners get wrong is that there is no requirement that EPA requires substantiation for all of those statements made in support of their confidentiality claim. How could someone substantiate confidentiality without showing that it can't be readily reverse engineered? Can you be confidential if your chemical can readily be reverse engineered? I think it would be very, very difficult to do. How is it possible? If it's readily reverse engineered or subject to reverse engineering, how can it still be confidential? It would likely not meet the confidentiality requirements. I'm trying to understand conceivably how the two are not mutually exclusive. I think they very well may be mutually exclusive, but I think the context of How could it possibly be legitimate to leave that out and put aside the assertion versus substantiation if it is essential to establishing, to substantiating confidentiality as the statute requires? This is an essential component of confidentiality. That might not be something you ask about at the substantiation stage. We would disagree with that characterization of it's an essential component of confidentiality. Again, what the substantive, if we go to 2613A, which references the substantive requirements for confidentiality. Except as provided in this section, the administrator shall not disclose information that is exempt from disclosure pursuant to subsection A of section 552 of Title V by reason of, and that is a reference to FOIA. Okay. It may be broader, but I don't understand how, I guess I'm still getting, you couldn't conceive, as I took your answer, of how something could be confidential as that term is used in this statute and yet readily subject to reverse engineering. And so how can you say that's not part of what they have to do to substantiate a confidentiality claim? There may be other things going on. I just don't understand how anything could be. Well, I think what is problematic is the petitioner's reading is essentially saying that any scenario in which would essentially defeat a confidentiality claim has to be substantiated. And that's not at all provided for. I know. Their argument is that there's a reason reverse engineering shows up in the assertions because that's critical to establishing confidentiality. It always has been. And then you come along with your new regulation and you say, don't bother about, effectively, don't bother making that reverse engineering showing. I would disagree with the characterization that we said don't bother. Well, you took them out. You took the questions out. Of the proposed rules. So to be clear, it's not as if these were longstanding questions. These were EPA-made-up proposal. And I think it's important to reference back the substantiation requirements section. And here it says, a person asserting a claim, this is 2613C3. It says, except as provided in paragraph 2, a person asserting a claim to protect information from disclosure under this section shall substantiate the claim in accordance with such rules as the administrator has promulgated or may promulgate pursuant to this section. So as an initial matter, the administrator had no obligation to promulgate any substantiation questions at all. But EPA did promulgate substantiation questions, and I believe there were seven or so in the proposed rule. The comments received by EPA said, we think these are too many questions. Can they be streamlined? EPA streamlined the questions in a manner that they saw best to meet the substantive benefits of substantiation questions while not being overly lengthy. So you're the attorney advising a company making one of these substantiation showings. Are you going to say to them, you need to show that it's not susceptible to reverse engineering, readily susceptible? What I would tell them is that they need to meet the substantive confidentiality requirements that include a showing that the information is not reasonably obtainable without the business's consent by other persons by use of legitimate means. Okay. So is it your position that that encompasses this reverse engineering showing? I think definitely if reverse engineering would be one of the legitimate means by which it could be. So it's not that you – Well, I guess it's not – Their position seems to be that you just dropped that statutory requirement. I'm just trying to clarify your position. Our position – They read the drop in those two questions as you're just not enforcing that requirement at all. And now what I'm hearing from you, which may be a reasonable interpretation of the regulation, is that no, it's already covered by this other provision. I'm trying to figure out whether this is accurate. So I think in our – to turn to – I don't think there's an obligation for an applicant to basically run through every single legitimate means by which information could be gathered and address them on a confidentiality application. But I want to turn real quickly to the standing argument. Wait, no, no. Before you turn, I get why you want to do that. But to go back – It's always a bad sign when you want to retreat like that. But you just said the rules said they have to show that there's no legitimate means of acquiring this information. And now you're saying, I thought you just said, and tell me if I misheard, was that, well, they don't have to show that every legitimate means is foreclosed. I guess my point, Your Honor, is that what the agency did here is it used its discretion in putting together substantiation questions. And one of the questions that they proposed that they did not end up including was a question that essentially restated what was in – what was a required statement in the assertion of claims. And in the assertion of claims, someone is required to certify under penalty of perjury that they have a reasonable basis to believe that the information is not readily discoverable through reverse engineering. The agency proposed a similar question in its substantiation questions that it declined to include in its final rule. And I think – Because? Well, because they wanted to streamline the question. Okay, so streamlining gets back to my question. Streamlining is not truncating. Right? Streamlining means that's what one does when one consolidates, eliminates redundancies. Correct. And so is the agency position that reverse engineering is already covered by the question that still required – the demonstration still has to be made about no legitimate means, if that's your position, that's one answer. And if your position is no, they wouldn't actually have to do that, which is what your they don't have to do everything comment sounded like to me. I'm trying to figure out. It either covers it – it's either meant to cover it or it's not, and I'm very confused by the position. The substantiation questions are to the extent – there's no obligation by any applicant to submit additional information apart from the substantiation questions. So to that extent – Yes, I'm asking you what your substantiation question – I'm sorry. What page is it on? I'm trying to get it here. Well, in the record on Federal Register 82 FR 37544. 14. 14? I got it. Okay. And I think – Is that – And I guess I would say if you look at – How do you streamline? How do you streamline? Well, I think part of what's important to note is if you look at question two, will disclosure of the information likely result in substantial harm to your business's competitive position? If you answered yes, describe with specificity the substantial harmful effects that would likely result to your competitive position. It also asks about information that the business has – efforts it has taken to maintain confidentiality. It looks at whether or not this information is in public documents. All of these questions go to whether or not the applicant meets the substantive standard for – Do they encompass reverse engineering or not? These questions do not specifically encompass reverse engineering. But, again, I think reverse engineering needs to be seen as, in a sense, a subcomponent of the broader substantive criteria for a confidentiality claim, which is whether or not – Which one? Just so we're on the same page. I'm sorry. Could you repeat the question? These would encompass a showing of no reverse engineering. I think it's – none of these specifically encompasses reverse engineering. And I think the agency was entitled to do that because reverse engineering is not itself a substantive requirement of the confidentiality provision. Now you're really confusing me. So Congress statute requires a certification of only four things. Yes. Suggesting that all those four things are important to the Congress. Correct. And the fourth one says a reasonable basis to believe that the information is not readily discoverable through reverse engineering, correct? Correct. That's what you have to certify, right? Correct. And then your brief says the four-part statement generally reflects the substantive requirements for protection from disclosure. That's at your red brief, page 10. Yes. And your brief at page 36 explains that this would provide no more information than that already – that is, your new questions would just provide no more information than the statement already would. Correct. And then on page 39 you say, indeed, EPA must and fully intends to follow all the statutory requirements regarding confidentiality claims. So the way that I had read your brief, and perhaps now it was too generously, is that you were saying that these are the four substantive requirements, that we, when we review these claims, we will look at these four things, that the only reason we didn't ask for this last question about reverse engineering is we didn't think it added anything to the others, but we will still require that it not be readily discovered through reverse engineering. Now, is that summary of your position incorrect in any respect? I think it is incorrect in that the statements that need to be certified under Section 14 that include the reverse engineering statements Our view of those is that those are statements that go to whether or not the substantive requirements of the confidentiality provisions are met, but are not necessarily independent substantive requirements of the confidentiality provisions themselves. So, for instance, to the extent that someone certifies that a specific chemical identity is not subject to reverse engineering, that goes to show that they would be subject to substantial competitive harm if this information was publicly disclosed. Maybe not. I don't know why competitive harm would have to happen. Maybe they just don't have many competitors on this, but they'd like to keep it confidential for whatever reasons. It doesn't mean, I don't know why you would think a showing of competitor harm would show that it can't be reverse engineered. I mean, unless you're assuming, as I had started this conversation, that it's the very essence of what it means to be confidential, that it can't be readily determined what that information is. At which point, moving back to saying these other questions capture that inquiry. Well, I think if, obviously, the EPA was tasked with, or given the opportunity, if it chose to take advantage of it, to ask substantiation questions. And they did ask substantiation questions that went to the substantive confidentiality requirements under the statutes. And one question was originally geared towards reverse engineering. They dropped that question after receiving comments. Did they ever receive a comment that said that particular question was just not succinct? You only give any explanation for why this was done. It says they were trying to be more succinct. Correct. Did any commenter say drop question five or six, whichever one it is? Not to my knowledge, Your Honor. Not to your knowledge? Not to my knowledge. So maybe the answer here is really to go back to the logical outgrowth claim. You had some number of questions all the way through K, A through K. You dropped only really the ones about reverse engineering. Those are ones that are specifically mentioned in the statute. How could commenters have known that you were planning to actually delete those questions? It's one thing to say a logical outgrowth has to do with things like succinctness. But this is not just succinctness. This is a dropping of one of the questions that Congress itself listed. How were they supposed to know to object to the dropping of one of the four questions that Congress insisted on? Well, I think in several respects. Most importantly, several commenters, and we cited them in the brief, did ask that the questions be shortened or streamlined. The claim you're now making, which is that reverse engineering is included somehow in something else. Your Honor, it's important to recognize it's not that someone told the agency, we don't think you need to include a reverse engineering question, because reverse engineering is not itself a substantive criteria, but just in a sense a question or a lens through which to look at whether or not information should be kept confidential. That view was always the agency's position, and so in looking to streamline. You don't think it's a substantive criteria, notwithstanding what you said in the brief? I think it's a substantive criteria. And, Your Honor, I realize this may be a very thin distinction, but I think we would agree that reverse engineering, if a chemical is subject to reverse engineering, it would likely not meet the substantive criteria for confidentiality, but simply because that does not necessarily make reverse engineering itself into the substantive criteria for reverse engineering. That is a little nuanced. And I guess I would lastly say. Let me ask you, I'm not sure how you can fail to incorporate the mandate for a system of unique identifiers, at least with respect to new confidentiality claims approved after the Lautenberg Act. I just don't get it. I'm sorry, could you repeat that question, Your Honor? You don't have a requirement for unique identifiers, right? I don't know how. You didn't incorporate that mandate that you establish a system of unique identifiers for confidential chemical identities. I don't know how you can have that system, at least with respect to confidentiality claims, approved after the Lautenberg Act. Well, I think it's important to, so the Lautenberg Act had many requirements, and EPA has undergone lots of different rulemakings. And here, again, you know, EPA has not approved any confidentiality claims. And, in fact, those approvals or disapprovals of confidentiality claims will be done subject to a separate rule that is about to be proposed. But there's no system for unique identifiers, right? Yes, there is. Well, I will say, EPA has proposed a rule that addresses unique identifiers for new confidentiality claims that came about essentially after this inventory rule, after the 2016 sort of cutoff date. So, for instance, this rule just addresses updating the TSCA inventory for both active and inactive substances, and then providing a mechanism by which processors or manufacturers can ask that a chemical substance  The unique identifier rule essentially comes into place upon the approval or disapproval of a confidentiality claim. None of these confidentiality claims is going to be reviewed until a separate review rule is put in place. And my counsel here just noticed that I can tell you 83 FR 30168 is EPA's proposed rule for unique identifier assignment for new confidentiality claims after the TSCA inventory. So you say it's being done? Correct. And just real quick, I know my So what's the timeframe expected for that rule? I would have to Never mind him. I apologize, Your Honor. It should be listed in the proposed rule. But again, that goes to confidentiality claims that are asserted outside of the process at issue in this rule. And lastly, I would say, if the Court does find EPA's explanation for why it cut the reverse engineering question from its proposed list of questions in the rule, that the proper outcome, in our view, would be remand without vacature for a better explanation as to why that question need not have been included. Does the other side disagree about that? They don't want vacature either, do they? You know, I'd have to double-check their briefs, but I believe they would not want vacature. Well, actually, I apologize for interrupting. I didn't understand that they want vacature of that rule. We wanted partial vacature, Your Honor. On other things. On other things, though, we did ask for vacature of the confidentiality provision with the hopes that they would rewrite it to include substantiation. All right. Well, you'll have a chance to come back up in a minute. It seems like a risky position for you, but okay. But any more from you? You know, the – no, Your Honor. Okay. Thank you. Thank you. Let me be sure if I understand what you're saying. You would rather have no confidentiality rule at all rather than one that's not quite as good as you want while they work on adding something to it? So our main goal is a remand with a direction to promulgate a new rule governing confidentiality within – we asked for six months, but a year would also be reasonable. So you're not asking to vacate the whole confidentiality? We did originally ask for that. You have a chance to think about that again now. You really think they're going to come – if you vacate the rule and there are no confidentiality requirements, that's better for you? I mean, one thing that does concern us is that they'll process a bunch of confidentiality claims in this window under the old illegitimate rule and then get to the new rulemaking and say, oh, we're all done, we don't have to look at them again. But if you vacate the rule, what would they do? I mean, I guess our position would be they should sit on the confidentiality claims until such time as they create a confidentiality review process that actually will scrutinize these claims for these criteria. But we would be very happy with a remand that directed them to promulgate a new rule that would address the flaws in their confidentiality provision. What's your claim with respect to the unique identifiers? Our claim is that it is part of the inventory rulemaking because TSCA Section 8b-7 states that – Do you agree that they're adopting? We are happy that they are finally adopting a unique identifier program, but they have not yet done so, and we have deep concerns that it may not happen. I mean, they made a lot of progress once we brought this issue up in this lawsuit. So one thing that would disconcert us is if this suddenly just dropped by the wayside. But our goal is to get a unique identifier system. So if they adopt one that actually applies unique identifiers to the inventory, we would be very pleased with that outcome. Our concern is that they may not do so. And in our view, it's required by 8b-7 that they apply unique identifiers to the new chemicals that are coming onto the inventory. Okay. Any questions from the bench? Thank you very much. We'll take the matter under submission. Thank you. Stand, please.
judges: Garland, Millett, Edwards